310-0141 Baker-Taylor v. Ostril May it please the Court. My name is Matthew Gnafo. I'm here for Baker and Taylor. Good morning, Your Honors. First of all, let me apologize for being late. Thank you for pushing my case. Your Honors, there is ample evidence in the record to support the Commission's decision that there's no causal connection between the alleged injury and Petitioner's then-current condition of ill-being. We have a long history of medical treatment which was noted in the Commission decision going back to 2000. Now, Petitioner previously had an award for a cervical surgery, and this occurred in 2001, and actually prior to this award, she in fact had another recommendation for surgery. Now, she continued to treat throughout 2002, 2003, 2004, several times in medical records it's again noted that she's a surgical candidate for cervical surgery. She continued to have injections during this period of time and continued to complain of pain as well. Now, we have an alleged date of injury of May 6, 2004. Two weeks, approximately two weeks prior to this date of injury, April 23, 2004, Petitioner underwent injections. Now, the Commission decision highlights Dr. Kelly's May 21, 2004 medical record. It's important to point this out for two reasons. First of all, this May 21 record makes no mention of a work injury happening May 6, 2004. No aggravation, no mention of a new injury. Second of all, and perhaps even more importantly, the record notes improvements in Petitioner's condition based on the injections she had April 23. Now, there's also complaints of lower back pain in this case. Now, specifically looking at the record, the circuit court appeared to be troubled by the fact that the Commission did not expressly disagree with the arbitrator's finding there was a work-related accident and somehow then suggests that the Commission erred when they found no causation. Does that seem to be whether the Circuit Court went wrong here? Absolutely, Your Honor. We don't dispute that there may have been an accident, but what we do dispute is the fact that there was an aggravation. And as this Court and we all know, you not only need an accident, but you need by preponderance of the evidence the fact that there was a causal connection between the accident and Petitioner's current condition. So we don't presume that because there was an accident there had to be some causal connection to the claimant's current condition of well-being? Absolutely correct. That's the disconnect there you're saying? Absolutely. Isn't the Circuit Court also concerned with Dr. Zolich, the reliance on Dr. Zolich in his perhaps inartful use of significant? That's true, Your Honor. However, I'm sorry. In what case does that suggest runs afoul of in the Commission's ruling? Well, the Commission saw that... Cispro, does that come to mind? Absolutely, Your Honor. However, we've got the fact that the Commission saw the totality of the evidence here. They saw Dr. Zolich's report. They saw Dr. Malik's report. They specifically found Dr. Malik less credible than Dr. Zolich. I'd like to point out a few of the things that may have led them to this conclusion. First of all, he doesn't mention any of the other treating doctors' records in his report or his testimony. Second of all, he actually states that Petitioner was not a surgical candidate prior to the May 6, 2004 accident. Now, we've got various mentions in the record of surgery, recommendations of surgery throughout 2001, 2, 3, and 4. In fact, Dr. Malik himself, in the records that are part of the evidence of this case, recommended surgery, Your Honor. Furthermore, we've got the fact that Dr. Malik made a comment that prior to the May 6, 2004 injury, Petitioner was asymptomatic and doing well. However, as already I pointed out, as early or as recent in time period to the May 6, 2004 incident, April 23rd, she was having injections for pain. In March, the record indicates that she recently ran out of her pain medications and her symptoms were, quote, out of control, unquote. This apparently doesn't equate with Dr. Malik's statement that her symptoms were asymptomatic and that she was doing well at this time. Furthermore, we've got evidence of her employment situation and witness testimony that just bolsters the fact that there's enough evidence in this matter to support the Commission's finding of no causal connection. As pointed out in the brief, there is no finding of causal connection here. It's not the situation where they found causal connection and then brought in an exception to basically deny benefits. That's not the case here. We never, the Commission never found causal connection. And kind of address a question that had previously been brought up. The mere fact that the Commission didn't overturn the finding of accident doesn't make this a compensable injury. I think we can agree with that. Thank you, Your Honor. And just to briefly address a few of the points brought up in Petitioner's brief. Repeatedly, they state that Dr. Malik's report is unrebutted. This is questionable to Baker and Taylor for the fact that not only does Dr. Zolich's report rebut it, but there's history throughout the medical records that is in conflict to Dr. Malik's report, as I illustrated earlier. So in essence, you're presenting this is a simple issue, as I understand what you're saying. You've got Malik for the claimant. You've got Zolich for your side of the case. And the credibility determination should be up to the Commission. Absolutely, Your Honor. But not only do we have Zolich, but we feel that the majority of the evidence, including over 600 pages, a lot of that being medical records, support our position as well. If not, any further questions? Thank you very much for your time. Thank you, Counsel. Counsel, please. Good morning, Counsel. Gentlemen, my name is Joe Yergin. May it please the Court. There's only two points I wish to make on this case. My opponent's arguments, they were considered and rejected by Judge Wenzelman and the Circuit Court. Are we interested in what the judge said, or are we interested in what the Commission said? Well, in essence, what the judge did, with my first point, the judge took somewhat of a legal approach in the sense that we, the petitioner, presented our side of the case on the basis of the CISPRO doctrine. We focused our attention on questions at the trial with Dr. Malik as to whether the condition aggravated or exasperated the condition. We did that. The respondent did not. So my first point is really directed toward that, where the Court came in and said, Counsel, you did what you needed to do with regard to CISPRO to answer the question whether or not the preexisting problem was a cause of the woman's subsequent treatment. We did that. They did not. And, therefore, the Circuit Court reversed the Commission and decided and went back. It was a unanimous decision. And the arbitrator had ruled for us. You couldn't convince De Muno and Gore at the Commission level. Well, Your Honor, I don't know that. Why don't you know that? It was a unanimous decision. Well, my first point, and I'll, let me direct. And let me point out again, we are interested in the Commission decision. I understand. Not especially what the Circuit Judge said. But I would like to know whether or not you recognize the fact that the woman was not the cause of the condition. I think there's a number of factors that I cited in my brief. And on that basis ---- Well, to put it in the simplest terms, I think what we're trying to get at is, yes, we recognize the doctrine that to be able to recover, if the work-related injury was not related to any work injury. As you pointed out, there seems to be some particular issues with the factual basis, the credibility of that opinion. Then you've got Zolich on the other side clearly saying the condition regarding her back complaints were not related to any work injury. Okay? You've got, in the course of saying that, you know, you have credibility issues to be determined within the province of the Commission. So you need to tell us, A, why the Commission can't do that and believe Zolich over Malik. And secondly, I'd like you to explain in doing so why it wasn't until eight months after the accident, reference to lower back complaints didn't show up in any of the medical records anywhere. Okay. Let me take, if I may, those are several questions. Let me take them one at a time. But first of all, if you compare how this accident happened with a woman pushing a cart, she was asymptomatic. She was working without restrictions, working full-time. She gets injured on the job. And you compare that to what happened in Sisbro, for example. In Sisbro, you had a gentleman that stepped off out of a cab of a truck. The doctor in Sisbro would find that his particular malady could have occurred simply by stepping off of a curb or walking on an uneven surface. So for starters, aggravation and exasperation of preexisting problems are a special breed in my view. We know we're going to have the plaintiff knows that we have to go to the med, because these kinds of cases will be challenged frequently. There's high medical costs once surgery comes about. But the point is, is that if you look at the condition that develops, for example, in Sisbro, you had a petitioner that was a diabetic. And then he developed a Charcot condition. It doesn't take what the commission did in our case in Ostro. They focused on Dr. Zolich's report. If you read Dr. Zolich's report, you can construe that as agreeing with Dr. Mallick that it was an aggravation and exasperation of her preexisting condition as to her neck. That's the only time he mentions the Sisbro matter. But then he also qualifies it. He said it's not a significant accident. It's not a significant accident. And it wasn't a significant exasperation. That's not the law under Sisbro. All it has to do is be a cause. What part of her body did the condition of this accident aggravate? Well, the doctor, Dr. Mallick gave an opinion that it aggravated both her back and her neck problem. And that was the only physician that gave that specific opinion. And I have no question as to how it affected her neck. She had an incontinence there. The right complaint was that she injured her neck, back, upper and left. And that did not say anything about her lower back pain or strain being affected at all. Well, I'll touch upon that, too. But let me now move to my, what I was going to do was, now, let me focus on my second point. Because I knew that this would come up. And I knew that someone would say, well, not so fast, counsel. Doesn't the commission, doesn't the juror, an arbitrator, have the right to disagree with your medical expert? Of course they do. That was Justice Weber's dissent, I think, in the Dean case. They can and they do. But if they're going to disagree, if they're going to disagree, when we have a medical expert like Dr. Mellon who gives unequivocal testimony that says, under CISPRO, that it aggravated and accelerated her preexisting problems, in contrast to what Dr. Zolich said, then don't be arbitrary. If the commission is going to come forward and say that, don't be arbitrary. And I would add one other point. In addition, be specific. Make your reasons, Mr. Commission, make your reasons specific. Make them legitimate. Make them legitimate. If you're going to be legitimate, significant acceleration, significant aggravation is not the point. It's got to be a cause only. So it's not a legitimate reason to reject what Mellick did. But let me add one other point. And that is, for example, what Judge Posner will do in the Seventh Circuit when he reviews Social Security cases, and that is don't be perfunctory. Don't be disinterested. Don't be apathetic. If you, Mr. Commission, wish to reject this doctor, and if you want to say it's less credible than Dr. Zolich, give us the reasons. I don't believe in this, looking at this decision, where they talk about, they say Dr. Zolich is more credible than Dr. Mellick. Now, it doesn't say, they don't say that the decision for Dr. Mellick is fatally flawed, as I think they did. I think in your case, Mr. Justice, and the Sorensen case back in 1998. They don't say that. They say it's just less credible than Dr. Zolich. But they don't tell you why it's less credible. They don't give reasons. That's not right. That's not right. Well, when you say it's strictly arbitrary, I don't know that we can agree. You seem to be suggesting, they said, we believe Zolich over Mellick. That's the ballgame and the discussion. There's some other evidence in here that clearly cuts against the claimant. The commission noted there's no reference to the claimant's lower back complaints in any of the medical records, anywhere in any documents, until January 2005, almost eight months after the accident. She did not check the box corresponding to lower when she filed the accident report, nor does any accompanying handwritten narrative mention any lower back pain or strain. Eight days after the accident, Provena St. Mary's Hospital discharged the claimant with a diagnosis, history of cervical disc disease, degenerative, no new injury noted. Dr. Kelly's record on May 21, 2004, states the claimant had pain localized in the left shoulder and neck region. Similarly, Dr. Mellick's notes of May 26, 2004, do not reference any pain or injuries to the claimant's back, nor did Dr. Salehi mention the claimant was suffering from any back pain when he examined her in September 2004. So how is that not supportive of the commission's decision? Well, first of all, in the decision itself that the commission came down with, they say that she did report, they say in the decision that she reported her back problem on May 14, 2004, at the hospital. The petitioner testified in their record that she reported it to Dr. Mellick on May 26, 2004. When the evidence step was in that she had pain in her neck and her back. Is it in Mellick's notes? Is it in Mellick's notes? No, it is not in Mellick's notes. I don't think that that's an uncommon thing from the perspective of a trial practitioner. But let me say this, that when we move, you know, we take an evidence step of a doctor. I mean, there is an opposing counsel has the ability to ask these kinds of questions. Dr. Mellick in his evidence deposition talks about the fact that when he got the case that the low back condition, what he focused on initially was the neck problem. And he talked about the fact that the, he testified that the initial care was primarily concentrated on the neck because that was her main problem. And only after that was taken care of and the pain improved did we start discussing treatment of her back. And then he further opined that she had an injury both to her neck and the low back. But to be fair, the neck injury was very acute, much more significant. And then he talked about the fact that treatment. And this is true. I mean, when you have back and neck issues, you're taking, you're doing things conservatively. You're taking anti-inflammatory drugs and the treatment is the same. Are you going to penalize the petitioner because the doctor didn't make in his notes the fact that early on he, that there was something that he didn't, he didn't write down the subject of the back? But in any event, if he, again, if you look at this case closely, you've got their doctor, their doctor. And if you separate the two, the two different maladies, the back and the neck. With the neck, Dr. Zolich says he agrees with us that it's an aggravation. You can construe that report that it's an aggravation. But he says he qualifies it. He says it's not significant acceleration. It's not significant, the accident wasn't significant. And that's hogwash. That's hogwash. Because if you look at CISPRO, even in CISPRO, I mean, again, you've got a guy stepping off of a truck. Their treating doctor comes in and says, hey, it could have happened just by walking on an uneven surface at work. So the significance of it is not the point. The point is, is that when you're down below where we are and you're trying these cases, just like what Dr., what Judge Wenzelman talks about, you've got to bring in, you've got to go to the mat. You try these cases with doctors and you have to get out the necessary stuff, the opinions. That's what trials are all about. And that's what we did. And they didn't do it. And that's why, really, why Judge Wenzelman, who's been handling the civil call for many years, feels that they didn't answer the question. So... How would you respond to the possible argument that the circuit court, in this case, substituted its judgment on credibility matters for the commission? Well, you see, sir, if you take the logic, like, for example, of the Dean case, I think the Dean case talks a lot about the commission substituting its opinion for the doctor. You can reverse that kind of an argument. Should the commission substitute its opinion for Dr. Mellon based upon what they do? Well, that doesn't answer the question. Can the circuit court or should the circuit court be entitled to substitute its judgment for that of the commission on a credibility issue? If it's arbitrary, if they don't give specific reasons, if they're not legitimate as they should be under CISPRO, if they're perfunctory, if they're dispirited, if they're disinterested, if they don't show and want to give you reasons why something is more credible, to me, that's not the way things should exist. And you're saying, in the commission's four-page decision, they didn't do anything. Well, sir, I wouldn't go there. No, I think your time is up. Thank you, sir. Thank you. Your vote? Aye. The clerk will take the matter under advisory for disposition.